# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## CENTRAL LAND COMPANY OF WEST VIRGINIA

### *v.*

## F. J. CALHOUN *et al.*

Decided March 27, 1880.

1. A defendant in a motion appearing and moving its continuance thereby waives all advantage which he might take of the error which had been committed by the plaintiff in failing to prove the service of the notice and to have the motion docketed on the return day.

2. A distress-warrant ought not to be quashed for the uncertainty of the description of the leased premises, where its description was: "A certain messuage and tenement situated in the city of Huntington in Cabell county, West Virginia, rented by the Central Land Company to F. J. Calhoun;" it not being necessary to describe the premises in such a case with the particularity necessary in the conveyance of the premises.

3. Nor should a forthcoming bond be quashed for the vagueness with which the property named in it is described, the description being: "All of F. J. Calhoun's household and kitchen furniture now in said tenement," referring to that described in the warrant; there being in such case no necessity that an inventory of the property should be made.

4. Though the forthcoming bond be left at the clerk's office before it is forfeited, yet, if the property is not produced on the day of sale, the officer may have the clerk endorse it as filed in the office after the day of sale, and it will operate as a judgment, and as if actually returned to the office after the day of sale.

1880
Special Term.

Central Land
Company of
West Virginia
*v.*
F. J. Calhoun
*et al.*

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

5. If the defendant in a motion on a forthcoming bond appears and makes defence, and the plaintiff proves the execution of the bond and its forfeiture, on a demurrer to the evidence by the defendants, judgment should be given for the plaintiff, though he failed to produce or prove the distress-warrant on which the forthcoming bond was based.

6. A court will take official notice of who is its clerk; and an endorsement by him of when a forfeited forthcoming bond was filed in his office will be regarded as evidence thereof, though he failed to add to his signature his official position as clerk of the court.

7. At common law, if a motion be made by a corporation, and the defendant pleads the general issue, or defends the case without filing any plea, the plaintiff cannot recover without proving its existence as a corporation. But if the defendant puts in a special plea, such as conditions performed, which impliedly admits the existence of the corporation, and it is tried on an issue made on such a plea, it is not necessary for the plaintiff to prove its existence as a corporation to entitle it to recover.

Writ of error to a judgment of the circuit court of Cabell county, rendered on the 15th day of December, 1876, reversing and setting aside a judgment of the county court of said county, rendered on the 5th day of February, 1875, wherein the Central Land Company of West Virginia was plaintiff, and F. J. Calhoun, Thomas H. Harvey and W. H. Harvey were defendants, allowed on the petition of the said Central Land Company of West Virginia.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

On September 9, 1874, the superintendent of the Central Land Company of West Virginia made an affidavit before a justice of the peace of Cabell county, that F. J. Calhoun, the tenant of said company, was justly indebted to it in the sum of $166.67 for rent reserved upon contract for a certain messuage and tenement situ_ ate in the city of Huntington, in said county; and

thereupon the justice issued against said Calhoun a dis-tress-warrant for said rent in the usual form, in which the making of this affidavit was correctly recited. This dis-tress-warrant was endorsed by the officer serving it: " Levied on all the household and kitchen furniture now in said tenement by consent of F. J. Calhoun, he waiv-ing an excessive levy, this September 9, 1874;" and afterwards it was further endorsed by this officer: "Bond taken for the delivery of property with Thomas Harvey and W. H. Harvey for security, and forfeited, 29th day of September, 1874;" and this warrant was further en-dorsed: "Filed in my office, Jos. S. Miller, clerk," said Miller being the clerk of the county court of Cabell, as judicially known to that court. This bond so filed was in the words and figures following:

" *Know all men by these presents*, That we, F. J. Cal-houn, Thos. H. Harvey and W. H. Harvey, are held and firmly bound unto the Central Land Company of West Virginia, their executors, administrators, succes-sors and assigns, in the sum of $350, for the payment whereof we bind ourselves jointly and severally, and each of us binds his heirs, executors and administrators. Sealed with our seals and dated this 14th day of Septem-ber, 1874.

" The condition of the foregoing obligation is such, that, whereas, the above named The Central Land Com-pany of West Virginia has sued out a distress-warrant for rent against the said F. J. Calhoun for the sum of $166.67, which writ is directed to the sheriff of Cabell county, and by virtue thereof the following goods and chattels, to wit: All the household and kitchen furniture now in said tenement, have been taken by the said sheriff to satisfy said distress-warrant, the amount whereof at this time, including sheriff's fees and commission, is $176.57, and the said F. J. Calhoun, the owner of the goods and chattels so taken, desires the said goods and chattels should be suffered to remain in his possession and at his risk until the day of sale, and has offered to

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

give sufficient security to the sheriff to have the same forthcoming at that time. Now, if the said F. J. Calhoun shall have the said goods and chattels forthcoming on the 29th day of September, 1874, at the front door of the court-house of said county, it being the day and place of sale appointed by the sheriff, then the above obligation to be void, otherwise to remain in full force.

> " F. J. Calhoun,          [Seal.]
> " Thos. H. Harvey,     [Seal.]
> " W. H. Harvey.        [Seal.]"

It was endorsed : " 1874, September 30th.    Filed in my office.

> " Teste Jos. S. Miller, *Clerk.*"

The Central Land Company of West Virginia on October 12, 1874, gave a written notice in the usual form to the obligors in this bond, that on the fifth day of the next term of the county court of Cabell county, West Virginia, it would move the said court to award execution upon said bond in its behalf for principal, interest and costs. This notice among other things recites the forfeiture of this bond on September 29, 1874. The fifth day of the next term of the county court of Cabell county was October 23, 1874. But on that day no entry was made of record that this notice was docketed. The first entry in the case was made on October 26, 1874, and was : " This day came the parties by their attorneys ; and on motion of the defendants this proceeding is continued." On the 4th day of February, 1875, the defendants moved the court to quash the distress-warrant in this case, and also moved the court to quash the bond and notice given upon said bond for award of execution thereon ; and the court refused to quash the distress-warrant, but continued the other motions till the next day, to which the defendants excepted ; and the next day it overruled these motions, to which action of the court the defendants excepted ; and thereupon they pleaded conditions performed and *non damnificatus*; and issues were joined

on these pleas; and after the plaintiffs had introduced all their evidence, the defendants demurred to the evidence, and plaintiffs joined in the demurrer. The jury found a verdict for the plaintiff, and assessed its damages at $176.57, with interest thereon from September 14, 1874, till paid, subject to the opinion of the court on the demurrer to the evidence. It shows that the plaintiff gave in evidence the forthcoming bond and the endorsements thereon, as hereinbefore stated, and proved the execution of this bond by the defendants. This being all the evidence the court overruled the demurrer to the evidence, and gave judgment for the plaintiff for the penalty of the bond, to be discharged by the damages assessed by the jury.

An exception was taken to the refusal of the court to sustain said motion to quash, and also an exception to the action of the court during the trial in refusing to permit the defendants to prove that the bond and distress-warrant were returned to the clerk's office of the county court on September 28, 1874, the day before the bond was forfeited, and it was endorsed as so returned by the clerk, which was afterwards annulled, and an endorsement made by the clerk that they were filed September 30, 1874. The second exception was to the rejection by the court of a plea offered by the defendants, that when this bond was forfeited on September 29, 1874, it was not in the possession of the sheriff who levied the distress-warrant; but that he had returned the same to said clerk's office on the 28th day of September, 1874.

The defendants took the case by writ of error to the circuit court of Cabell; and on September 15, 1876, the circuit court reversed the judgment of the county court at the costs of the appellee, the said plaintiff, and sustained the motion of the defendants to quash said forthcoming bond, and the same was ordered to be quashed.

To this judgment of the circuit court a writ of error has been allowed to this Court.

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

*Simms & Enslow,* for plaintiff in error, cited the following authorities :

Powell on App. Pro. p. 121, §12 ; *Id.* p. 181, §101 ; 2 W. Va. 310; 5 Blackf. (Ind.) 298 ; 1 Rob. Pr. (Old) 211, 349 ; 5 Rob. Pr. (New) 671 ; 6 Leigh 278 ; 2 Tucker 297, 367 ; Stephens on Pl. 361, 362; 8 Gratt. 539 ; 15 Gratt. 518; 7 Leigh 68–80 ; 13 S. & M. 544 ; 28 Miss. 283; 19 Ga. 139 ; 10 Ohio St. 488; 3 W. Va. 260 ; 3 E. D. Smith (N. Y.) 553 ; 29 N. Y. 485; 31 N. Y. 102 ; 27 How. P. R. 47 ; 49 Pa. St. 73 ; 4 W. Va. 397.

*Thomas H. Harvey,* for defendants in error, cited the following authorities :

Acts, 1872–3, ch. 45 ; 6 W. Va. 336; 1 H. & M. 4 Code, ch. 93, §§7, 8, 10 ; 1 Wash. C. C. 29 ; 4 McLean 329; 5 *Id.* 148; 14 B. Mon. 474 ; 25 Gratt. 211; Acts 1872–3, ch. 101, §4 ; 1 Leigh 463 ; 3 Rand. 554 ; Rob. Forms 274 ; 5 Ark. 409 ; 6 Ark. 148; *Id.* 375 ; 9 Leigh 244 ; 12 W. Va. 537.

*James H. Ferguson,* for defendants in error, relied on the following authorities :

3 W. Va. 260 ; 5 W. Va. 257 ; 1 Wash. 259 ; 2 Wash. 189 ; 1 Munf. 605 ; 6 Munf. 32 ; 1 Leigh 442 ; 2 Leigh 545; Rob. Forms 215–217, 225–226 ; 1 Leigh 315.

GREEN, PRESIDENT, delivered the opinion of the Court :

The county court properly took jurisdiction of this case; and the circuit court did not err in recognizing its jurisdiction, which it did by passing judgment on the merits of the case. It is true that the notice for the award of execution on the forfeited forthcoming bond was not, as it should have been, docketed in the county court on the day to which the notice was returnable, after proving the due service of the notice. This omission of the plaintiff in error to have his notice proved and his motion docketed at the proper time could have been

*Syllabus 1.*

taken advantage of by the defendants in error in the county court; but by entering a general appearance three days afterwards, and moving to have the proceedings on their merits continued, and failing to ask before such appearance and motion to have them dismissed because of this irregularity, the defendants admitted themselves to be properly before the court and effectually waived all right to object to this irregularity, even in the court below, much less in this Court. See *Venable et al.* v. *Coffman et al.*, 2 W. Va., 319; *The Bank of the Valley* v. *The Bank of Berkeley*, 3 W. Va. 391. The court therefore did not err, when at a subsequent term it refused to quash the notice, unless on its face it was fatally defective; and the counsel of the defendants in error do not contend that it was. Nor did the county court err in refusing to quash the distress-warrant. The only reason for so doing urged by the counsel for the plaintiff in error is, that it does not sufficiently describe the property which was rented, or where the messuage and tenement were, the goods and chattels on which were directed to be distrained. The warrant describes "the rent as reserved upon contract for a certain messuage and tenement situated in the city of Huntington, in said county." The writ directs the sheriff to distrain "so much of the goods and chattels of the said F. J. Calhoun in and upon the said messuage and tenement, or which have been removed not more than thirty days, as shall be sufficient to satisfy the rent due and in arrears as aforesaid and the costs of distress."

The motion to quash the bond, it is insisted, should have been sustained for a like reason, the insufficient description of the property taken under this distress-warrant. The description of this property in the bond is the same as that endorsed by the sheriff on the distress-warrant, that is, "all the household and kitchen furniture now in said tenement;" and in addition thereto the bonds states, that F. J. Calhoun is the owner of these goods and chattels.

The county court did not err in overruling these mo-

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

Syllabus 2.

Syllabus 3.

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

tions. The description of the property taken is amply sufficient both in the distress-warrant and forthcoming bond. To sustain his position, that the description of the property in the warrant in the return on the warrant made by the sheriff and in the forthcoming bond, is insufficient the counsel for the plaintiff in error rely on what was said by Judges Green and Cabell in *Harper et al.* v. *Patton*, 1 Leigh 315, 320. Judge Green simply says: " It is sufficient that the bond recites the levying of the execution and upon what specific property ;" and Judge Cabell : "The objections taken to the bond are not valid. The bond recites the levying of the execution, and the property on which it was levied." This amounts simply to saying that the property levied on must be specified, but how specified is in no manner indicated. In that case the manner in which the property levied on was specified, does not appear ; it only appears that the bond does not state that it was the property of the debtor, or whose property it was. And the court did not regard this as a fatal defect. The forms laid down in Conway Robinson's New Forms, pp. 215, 216, 217, 225 and 226, relied on by the plaintiffs in error, simply show that the property, which is levied on, should be specified ; but these forms are entirely silent as to how it should be specified.

The counsel of the plaintiffs in error relies on the cases of *Garrett* v. *Woodbridge et al.*, 4 McLean C. C. 329 and *Heirs of Briggs* v. *Blue et al.*, 6 McLean C. C. 148, to establish that the return on an execution or process must be so certain, as to show on its face without the aid of parol testimony exactly what property was levied on, so that the purchaser of the property might know certainly on the face of the return what property he purchased. Both of these cases were levies on and sales of real estate ; and, as the title to real estate can only be conveyed by deed, it might well be held, that the return of the levy and the deed of the sheriff must be as particular and specific in reference to the land sold as would be essential to the description of the land, if conveyed by a

1880
Special Term.

Central Land
Company of
West Virginia
v.
F, J. Calhoun
et al.

private deed, which could not be aided by the declaration of the party making the deed. Beyond this these decisions did not go ; and it is admitted that other decisions have not gone so far. But the reasoning of these cases is not strictly applied to the return of a levy on personal property, the title to which constantly passes by parol. The maxim *id certum est, quod certum reddi potest* is properly applicable to a return of a levy on personal property at least.

The only case of a return of a levy on personal property being held insufficient because not described with the necessary particularity, referred to by the counsel for the plaintiff in error, in the case of *Barnes et al: v. Bellington et al.*, 1 Wash. C C. 38. The language used by the judge is: "The sheriff must always designate the property seized under execution, either in the body of the return, or by reference to a schedule accompanying it. The reason is obvious; the execution creating a lien, it should be known to others, who may take posterior executions, or who may deal with the debtor, what property is affected by the lien, and what not. In this case the return is 'levied on goods as per inventory;' but no inventory was made or returned with the execution." The law as thus laid down is clearly right. This return was simply the equivalent of "levied on goods." This was perfectly indefinite and vague. A deed of trust which conveyed property, simply describing the property as "goods," would be a nullity. One might be mislead by the syllabi of these circuit court decisions, inasmuch as they state that the return should describe the property levied on with a greater particularity than is justified by the decisions themselves.

According to the decisions rendered in these cases the return made on the distress-warrant in the present case specified the property levied on with all the certainty that is necessary. For a deed of trust conveying "all the grantor's household and kitchen furniture now in his house" would unquestionably be valid. In fact nothing

47

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
el al.

is more common than so to describe property conveyed in a deed of trust; and the forthcoming bond and distress-warrant referred to in it so describe the property in this case.

But there are decisions with reference to the particularity with which a return of a levy on personal property should be made, in which it has been held, that a minute description, such as of itself unaided by parol testimony would be sufficient to fully identify the property levied on, was not necessary. Thus in *Watts* v. *Cleaveland*, 3 E. D. Smith's Reports 554, it was decided that a levy on a lot of goods was sufficient, and that it was not necessary that the officer should make or return an inventory of the goods, though it was desirable. The same was held in *Wood* v. *Vanarsdale*, 3 Rawle 401, and in *Roth* v. *Wells*, 29 N. Y. 471, and in *Pugh* v. *Calloway*, 10 Ohio St. 488. To avoid the evils which might arise from no inventory of goods levied on being made, a statute in New Jersey subjects the sheriff to a fine for failing to return an inventory. See 1 Coxe 136, 169. Of course it can not be required that the forthcoming bond should be any more specific in its description of the property than the levy and return thereof.

The position of the counsel of the plaintiff in error therefore, that "in order to impose upon the securities in the forthcoming bond the necessity of delivering the property levied on, it is necessary to tell them in the bond itself what property they had to deliver," is untenable, if we are to understand him, as he intends we should, that it is necessary to name specifically each article of household and kitchen furniture levied on, in other words, to set forth an inventory of the property taken. He asks: "Otherwise how was it possible for them to know what they were required to deliver?" By inquiring of their principal or of others what property of this description was in the house of their principal when "all the household and kitchen furniture" was levied upon, and precisely as every trustee, who sells under a

deed of trust conveying all of a grantors household and
kitchen furniture, finds out what property he is required
to sell.    If an inventory of the household and kitchen
property levied on had been set out in the forth-
coming bond, they could not tell whether a partic-
ular bed or chair was one of those levied on without en-
quiring of their principal whether it was in the house
when the levy was made.    No description of such prop-
erty, that it is practicable to make, however detailed could
enable them to identify the particular articles of property
to be delivered without such enquiry.

The objection, that the tenement, which the tenant had
rented and in which the property to be levied on was to
be found, is simply described as a " tenement situated in
the city of Huntington, in the county of Cabell, West
Virginia," is too vague a description, is still more un-
founded.    If the street on which the house was situated
had been named, it would not without enquiry have en-
abled the sheriff to identify the house ; and surely it can
not be pretended that the place where the sheriff is to
find the property must be specified in the warrant with
all the certainty necessary to identify it without enquiry.
This is a degree of certainty not required even in con-
veying land.

I conclude, therefore, that the county court did not
err in refusing to quash either the distress-warrant or
forthcoming bond for the uncertain description of the
property.

The county court did not err in refusing to hear the
evidence on the motion to quash the distress-warrant,
bond and notice, that the bond and distress-warrant were
in fact returned to its clerk's office the day before it was
forfeited and was endorsed so returned by the clerk, but
the endorsement afterwards changed so as to show it was
returned the day after the forthcoming bond was forfeited.
Nor did it err in rejecting the plea setting forth these
facts, and alleging that the bond and distress-warrant
was not in the possession of the said sheriff who levied

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

Syllabus 4.

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

the same on the day the said property was to be delivered. In *English* v. *Finicey*, 5 Blackf. (Ind.) 299, the court held bad a plea, that the property was never demanded of the defendant nor was any person ready or willing to receive the same at the time it was to be delivered or any time since. It should, the court say, have averred that the defendant had the goods at the time and place ready to be delivered. It is obvious that a like averment was necessary, to make this plea offered by the defendants good; and because of its omission the court properly rejected it. It is obvious, that it was entirely immaterial whether the sheriff kept the warrant and bond in his possession till the day of sale, or left them in the clerk's office for convenience; and that if the clerk made a blunder in endorsing them as filed, he had a perfect right to amend his endorsements by noting them filed after the return day; and the evidence of his action in this matter was properly rejected as entirely immaterial.

The only remaining enquiry is: Did the county court err in finding for the plaintiff on the demurrer to the evidence? The counsel of the plaintiff in error insists, that the case made by the plaintiff was fatally defective, because he failed to produce before the jury on the trial of the case the original distress-warrant and the return thereon and the return of the sheriff thereon showing that the forthcoming bond was forfeited; and that there being thus a total failure on the part of the plaintiff to show that the bond was forfeited, the court should have found for the defendant. If there be a judgment by default on a forfeited forthcoming bond, the appellate court will regard the execution as a part of the record; but if there be a variance between it and the execution, the judgment will be reversed. When therefore there is a judgment by default, it is very proper to recite in it that the execution, as well as the bond, was produced and inspected by the court; and such is the form of a judgment by default laid down by Robinson. See Con-

Syllabus 5.

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

way Robinson's Forms, page 274, and *Glascock's adm'x* v. *Dawson*, 1 Munf. 605, and *Preston* v. *The Auditor*, 1 Call 471. But the appellate court will not regard such a variance, if the defendant appeared in the court below and made no objection to such variance, and did not make the execution a part of the record by bill of exceptions or otherwise. See *Bronaugh* v. *Freeman's ex'r*, 2 Munf. 266; *Burke, adm'r*, v. *Levy's ex'rs*, 1 Rand. 1. But if the record shows affirmatively, that it was objected to in the court below, because of defects in the execution, and that it was for that reason quashed, the execution will be inspected, though not more formally made a part of the record. See *Couch* v. *Miller*, 2 Leigh 545.

In the case before us the plaintiffs produced the forthcoming bond and proved its execution by the defendant; and this bond states on its face "that the Central Land Company of West Virginia had sued out a distress-warrant for rent against the said F. J. Calhoun, which writ is directed to the sheriff of Cabell county; and by virtue thereof the following goods or chattels, to wit, all the household and kitchen furniture now in said tenement, had been taken by the said sheriff to satisfy said distress-warrant, the amount whereof at this time including sheriff's fees and commissions is $176.57, &c." Thus the defendants are clearly proven to have admitted solemnly under their hands and seals every fact which the production of this distress-warrant would have shown, except that the amount of the rent due is not there stated; but in lieu of this the forthcoming bond states the amount of this rent due to that time including sheriff's fees and commissions. Surely the court on a demurrer to evidence by the defendants must hold it to be true, as there admitted, that this $176.57 was the amount of the distress-warrant at the time this bond was issued, including the sheriff's fees and commissions; and the defendant's duty was after appearing and making defence to introduce the original distress-warrant

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et~al.

and make it a part of the record, if he wanted to take any advantage of a supposed variance in the amount. On a demurrer to evidence by the defendants no mistake in the amount named in the bond would be presumed by the court below, much less in this court. The decisions before referred to show, that after he has thus appeared and failed in any manner in the court below to make the distress-warrant a part of the record or to allege any variance between it and the bond, he can not in this court ask that such variance should be presumed. The Court of Appeals in Virginia in these cases have gone further, and said, under such circumstances this court should not look at the distress-warrant, even to ascertain if there be such variance.

It is claimed however, that there was an entire failure of the plaintiff to prove that this bond was forfeited. The law, section two of chapter one hundred and one, pages two hundred and fifty-nine and two hundred and sixty of the Acts of 1872-3, provides that if the bond is forfeited, it shall be returned to the clerk's office of the county court of the county wherefrom such warrant emanated. "The clerk shall endorse on the bond the date of its return, and against such of the obligors as may be alive when it is forfeited and so returned, it shall have the force of a judgment." The plaintiffs in the case produced the endorsement on the bond of the date of its return, made by the clerk of the county court pursuant to this statute, which date was the day after the property was by the face of the bond to have been delivered. The law expressly provides that the sheriff shall return this bond to this clerk's office after it is forfeited. Upon the well known principles which govern courts on demurrers to evidence the court was bound to presume from this endorsement by the clerk, made by him in the official performance of his duty, that the bond was returned to the clerk's office by the sheriff as a bond which had been forfeited, it being made the official duty of the sheriff to return it within thirty days after it was

forfeited, unless the amount named in the bond as due had been paid.

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

It is said however, that there is no evidence that this endorsement on this bond was made by the clerk of the county court of Cabell in his capacity as such clerk. The endorsement is signed : " Jos. S. Miller, clerk." Of course the county court of Cabell would take judi- cial notice that Jos. S. Miller was its clerk ; and this endorsement must be presumed to have been made in the official performance of his duty as such clerk, as clearly as if he had signed his name and appended " clerk of the county court of Cabell." But the plaintiff in error iusists on the authority of *Johnson's adm'x.* v. *Bank of Marietta,* 9 Leigh 244 ; *Hart* v. *The B. & O. R. R. Co.,* 6 W. Va. 336 ; *Anderson* v. *Kanawha Coal Co.,* 12 W. Va. 537 ; that it was absolutely essential that the plain- tiff should prove that it was a corporation. These and other Virginia cases show, that while it is not necessary to aver in a declaration that the plaintiff is a corporation duly constituted, yet this question may be put in issue by a plea filed by the defendant, or by the general issue. See *Reese* v. *Conococheague Bank,* 5 Rand. 326. And if a corporation makes a summary motion on a forthcoming bond, for instance, the motion may with- out any formal pleadings be tried by the court. See *McKinster, &c.,* v. *Garrett et al.,* 3 Rand. 554 ; and if so tried without pleadings, the corporation must prove its existence. see *Grays* v. *Turnpike Co.,* 4 Rand. 578 ; for in such case the defendant may rely on all defences it could make under the general issue or under any special plea. But if the defendant chooses, on a motion for a forthcoming bond he may file a formal plea in writing ; and on issue being taken, the court may try it or may submit it to a jury, as to it may seem best ; *Burke, adm'r,* v. *Levy's ex'rs,* 1 Rand. 1. If the defendant elects to file a formal special plea, on which issue is joined, and the court submits the issue to the jury, they will of course find their verdict for the plaintiff, if he introduces evi-

Syllabus 6.

Syllabus 7.

1880
Special Term.

Central Land
Company of
West Virginia
v.
F. J. Calhoun
et al.

dence to sustain his side of the particular issue they are trying, even though the evidence would have been insufficient, had the case been tried before the court without any pleadings upon the general issue.

Whether the demurrer to the evidence should have been decided by the county court in favor of the plaintiff in this case, must depend on the issue which the evidence was introduced to sustain. Issues were taken on two pleas, conditions performed and *non damnificatus*. It is admitted by the appellant's counsel that this plea of *non damnificatus* was an improper plea in this case; and its filing ought not to have been permitted. See *Archer* v. *Archer, adm'r,* 8 Gratt. 539. The issue taken on it was therefore immaterial; and the only proper issue before the jury was the issue on the plea of conditions performed. This is not, as the counsel of the plaintiffs in error says, the general issue and did open to the defendants all defences which they might make under the general issue or any special plea. Under a special plea that the plaintiff was not a corporation, that is, had no existence, or under the general issues, as *non est factum,* not guilty, and *non assumpsit,* we have seen it would have been incumbent, according to the law of West Virginia as it existed when this issue was tried, for the plaintiff to prove its existence as a corporation. But upon issue joined on the plea of conditions performed neither in this state nor any where else, was it ever necessary for the plaintiff to prove its existence as a corporation, and for the simple reason, that by alleging that they had performed the conditions the defendants admitted the executions of the bond and that it was obligatory on them, that is, that the party entitled to the benefit of the bond had an existence. For if he had not, the bond would have been a nullity. I conclude therefore that it was not in this case necessary for the plaintiff to prove its existence as a corporation, and its failure to do so was no ground for finding against it on the demurrer to evidence. The county court then did not err in finding

on the demurrer to the evidence that the evidence supported the issue for the plaintiff, and in entering up a judgment for it pursuant to the verdict of the jury. And the circuit court did err in reversing this judgment and in quashing the forthcoming bond and rendering a judgment for the defendants for their costs in the county court and in the circuit court including $10.00 allowed by statute.

The judgment of the circuit court of September 15, 1876, must therefore be set aside, reversed and annulled, and the plaintiff in error must recover of the defendant in error its costs in this court expended ; and this court proceeding to render such a judgment as the circuit court ought to have rendered doth affirm the judgment of the county court rendered February 5, 1875, and doth adjudge that the plaintiff, the Central Land Company of West Virginia, do recover of the defendants its costs expended in the circuit court and damages according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.